IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STAN MOORE,                        :

     Plaintiff,                   :

vs.                               :        CIVIL ACTION 04-00797-CG-B

WARDEN JERRY FERRELL, *et al.*,   :

     Defendants.                  :

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, a prison inmate proceeding <u>pro se</u> and *in forma pauperis*, filed the instant case alleging violations under 42 U.S.C. § 1983 (Doc. 1). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2 (c)(4) for appropriate action.

Plaintiff claims that Defendants, Warden Jerry Ferrell, Assistant Warden Walter Myers, Correctional Officer Supervisor Tony Patterson, Correctional Officer Supervisor Albert Williams, Correctional Officer Supervisor Steven Lane, and Correctional Officer Charles Andrews were "deliberately indifferent" to conditions of overcrowding and understaffing at Fountain Correctional facility, and this resulted in him being attacked by two fellow inmates. (Doc. 1 at 15-21, Complaint). Plaintiff contends that Defendants' failure to protect him violated his rights under the Eighth Amendment to the United States Constitution. (<u>Id.</u>). Plaintiff further alleges that Defendants "conspired to refuse to protect" him by not taking the proper

action to ensure his safety. (<u>Id.</u> at 14-15).

Defendants filed a special report and answer on April 11, 2005, denying that they violated Plaintiff's constitutional rights and asserting the affirmative defenses of sovereign and qualified immunity. (Doc. 10, Special Report).  On May 17, 2005, the Court entered an Order converting Defendants' special report to a motion for summary judgment. (Doc. 14).  On June 16, 2005, Plaintiff filed a response to Defendants' motion for summary judgment, reasserting his Eighth Amendment claim against Defendants. (Doc. 16, Response in Opposition to Special Report).

After careful consideration by the Court, it is recommended that Defendants' motion for summary judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants Jerry Ferrell, Walter Myers, Tony Patterson, Albert Williams, Steven Lane, and Charles Andrews and against Plaintiff Stan Moore on all claims.

<u>I. FACTS</u>

On or about October 19, 2004, at approximately 6:15 a.m., Plaintiff was attacked by two inmates while he slept in his prison cell at Fountain Correctional Facility. (Doc. 1 at 12). The attack was prompted by a dispute between Plaintiff and one of the inmates, Eddie Johnson, over "store items" that Plaintiff purportedly owed Johnson. (<u>Id.</u>).  According to Plaintiff, Johnson struck him in the face and head with soap wrapped inside a sock,

2

and the other inmate, Victor Broughton, struck him with a combination lock. (Id. at 12).

On the morning of the attack, Correctional Officer Charles Andrews was assigned to Plaintiff's dormitory. (Doc. 16 at 10, Affidavit of Charles Andrews; Doc. 10, Part 3 at 6, Post Listing). According to Plaintiff, Officer Andrews had "abandoned his assigned post" at the time of the attack, allowing the dormitory to be "totally unsecure." (Doc. 1 at 13). According to Officer Andrews, he was patrolling another area of Plaintiff's dormitory at the time of the attack and simply did not have a direct view of Plaintiff's cell. (Doc. 16 at 10). It is undisputed that, upon discovering that the incident had occurred, Officer Andrews immediately called for assistance and obtained medical treatment for Plaintiff. (Id.).

Plaintiff's Prison Health Services records show that, at 7:13 a.m., he presented to the emergency clinic in "good" condition and was examined by a nurse and then by prison physician, Dr. Robert Barnes. (Doc. 28, Part 2 at 3, Plaintiff's Medical Records). The examination revealed a cut to the "middle of [the] eye area [with] active bleeding." (Id.) In addition, Plaintiff had a "knot" on his "right temple behind [the] left ear" and complained of double vision. (Id.) Plaintiff's vision was checked and his injuries treated, and he was released at 7:25 a.m. (Doc. 10, Part 3 at 8, Institutional Incident Report).

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with some basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 322-23.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or

4

is not significantly probative, summary judgment may be granted."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)
(internal citations omitted).  Summary judgment will be granted
against a party who fails "to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Celotex, 477 U.S. at
322.

### III. DISCUSSION

In this action, Plaintiff seeks redress for an alleged
constitutional deprivation pursuant to 42 U.S.C. § 1983.  Section
1983 provides that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).

Plaintiff claims that Defendants violated his Eighth
Amendment right to be free from cruel and unusual punishment by
failing to ensure his physical safety in an environment of
overcrowding and understaffing, thereby allowing fellow inmates
Johnson and Broughton to attack him. (Doc. 1 at 12-21).
Defendants concede that, at the time of the attack on Plaintiff,

the prison was experiencing conditions of overcrowding and
understaffing. (Doc. 10, Part 2 at 2-4, Ferrell and Williams
Affidavits). Defendants maintain, however, that the incident was
not caused by overcrowding or understaffing but, rather, was an
isolated event caused by Plaintiff bartering and trading with
other inmates in violation of prison regulations prohibiting such
conduct. (Id.). Defendants further assert that they had no
knowledge of any risk of harm to Plaintiff from Johnson,
Broughton, or any other inmate, nor were they otherwise
"deliberately indifferent" to Plaintiff's safety. (Doc. 10, Part
1 at 1, Special Report and Answer). Finally, Defendants argue
that they are entitled to absolute and qualified immunity from
suit by Plaintiff.[1] (Id.).

---

[1] Plaintiff is suing Defendants in both their official and
individual capacities. As state officials, Defendants are
absolutely immune from suit for damages in their official
capacities, see Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277
(11th Cir. 1998) (state officials sued in their official
capacities are protected from suit for damages under the Eleventh
Amendment). Defendants are not immune, however, from suit in
their official capacities for prospective injunctive relief to
end continuing violations of federal law. See Ex parte Young,
209 U.S. 123, 155-56 (1908); see also Summit Med. Assocs., P.C.
v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).
    "Qualified immunity protects government officials performing
discretionary functions from suits in their individual capacities
unless their conduct violates 'clearly established statutory or
constitutional rights of which a reasonable person would have
known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003)
(quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). In
determining whether qualified immunity is appropriate in a given
case, "[t]he court must first ask the threshold question whether
the facts alleged, taken in the light most favorable to the
plaintiffs, show that the government official's conduct violated

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." <u>U.S. Const. Amend. VIII</u>.  The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-35 (1994).

In <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . .  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

<u>DeShaney</u>, 489 U.S. at 199-200 (citations omitted).  Because the Eighth Amendment protects a prisoner from cruel and unusual

a constitutional right." <u>Dalrymple</u>, 334 F.3d at 995 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201.

punishments, it imposes a duty on officials to protect an inmate from attack by another inmate; however, not every injury inflicted by another inmate results from a violation of the Constitution.  Farmer, 511 U.S. at 832-34.

In order to prevail on his Eighth Amendment claim brought under § 1983 in this case, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim focuses on whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." See LaMarca, 995 F.2d at 1535.  This standard requires that the alleged

8

deprivation be "objectively, 'sufficiently serious.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).  The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." <u>LaMarca</u>, 995 F.2d at 1535 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).  In a situation where an inmate complains about being attacked by another inmate, the inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834.

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." <u>Sims</u>, 25 F.3d at 983 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).  This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson</u>, 501 U.S. at 297).  In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety.  <u>Id.</u> (citations omitted).  In defining "deliberate indifference," the court stated:

> We hold . . . that a prison official cannot
> be found liable under the Eighth Amendment
> for denying an inmate humane conditions of

9

> confinement unless the official knows of and
> disregards an excessive risk to inmate health
> or safety; the official must both be aware of
> facts from which the inference could be drawn
> that a substantial risk of serious harm
> exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  The court concluded that the

"subjective recklessness" standard of criminal law is the test

for "deliberate indifference" under the Eighth Amendment.  Id. at

839-40.  There is no liability for "an official's failure to

alleviate a significant risk that he should have perceived but

did not. . . ."  Farmer, 511 U.S. at 838.  It is not enough that

a plaintiff proves that the defendant should have known of the

risk, but did not, as actual subjective knowledge is the key.

See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir.

1996).  A prison official's duty under the Eighth Amendment is to

ensure "reasonable safety," a standard that incorporates due

regard for prison officials' "unenviable task of keeping

dangerous men in safe custody under humane conditions." Farmer,

511 U.S. at 844-45.  "Whether one puts it in terms of duty or

deliberate indifference, prison officials who act reasonably

cannot be found liable under the Cruel and Unusual Punishments

Clause." Id.

    Finally, Plaintiff must establish an affirmative causal

connection between the Defendants' actions, orders, customs,

policies, or breaches of statutory duty and a deprivation of

Plaintiff's constitutional rights in order to state a claim upon which relief may be granted. <u>See</u> <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986).  A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation; by proving that a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights; or by proving that a supervisory defendant breached a duty imposed by state or local law, and this breach caused Plaintiff's constitutional injury. <u>Id.</u>

Having set forth the general legal principles relevant to Plaintiff's claim, the Court now turns to the application of those legal principles to the facts before the Court.  First, with respect to the objective element of Plaintiff's Eighth Amendment claim, Plaintiff must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him. <u>Farmer</u>, 511 U.S. at 834.  It is settled that "confinement in a prison where violence and terror reign is actionable." <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1320 (11th Cir. 2005) (citations omitted). Although Defendants concede that Fountain Correctional Facility was overcrowded and understaffed at the time of Plaintiff's attack, Plaintiff has failed to present any evidence that those conditions actually posed "a substantial risk of serious harm" to

11

him.[2] <u>Cf.</u> <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1583 (11th Cir.
1995) ("Hale produced evidence that inmate-on-inmate violence
occurred regularly when the jail was overcrowded, as it was
during May 1990 and the two preceding years.  Moreover, the
evidence indicated that the violence was severe enough to require
medical attention and even hospitalization on occasion.").  While
"an excessive risk of inmate-on-inmate violence at a jail creates
a substantial risk of serious harm," "occasional, isolated
attacks by one prisoner on another may not constitute cruel and
unusual punishment." <u>Purcell</u>, 400 F.3d at 1320-23 (granting
summary judgment for sheriff and jail administrator where
Plaintiff failed to present evidence that conditions at the jail
rose to the level of a constitutional violation, despite the fact
that inmates were allowed to keep money in their cells; inmates
were allowed to play cards and gamble; the physical layout of the
jail hindered guards from seeing into certain cells at night from
the control tower; and there was a history of isolated, inmate-
on-inmate fights).  Here, Plaintiff has presented no evidence of

---

[2] Defendant Williams testified that, on October 19, 2004, he
was the Shift Commander for the First Shift Team, and Defendant
Andrews was assigned to "Dorm # 1," Plaintiff's dormitory.  (Doc.
10, Part 2 at 3).  He further testified that the design capacity
for the prison was 755 inmates, and they were housing 1,213 at
the time.  (<u>Id.</u> at 4).  Defendant Williams testified that
"[a]lthough the prison houses more inmates than designed to hold,
[with] cooperation from the inmate population to follow rules and
regulations set forth by the Alabama Department of Corrections'
Commission and the Warden of G.K. Fountain Correctional Center,"
such incidents can be avoided.  <u>Id.</u>

other acts of inmate-on-inmate violence, whether from
overcrowding, understaffing, or otherwise, nor has he produced
evidence of any other conditions at the prison that exposed him
to "the constant threat of violence." Id.   Therefore, the Court
finds Plaintiff's evidence insufficient for a jury to reasonably
find that the conditions under which he was incarcerated
presented "a substantial risk of serious harm." Farmer, 511 U.S.
at 834.   Accordingly, Plaintiff has failed to satisfy the
objective element of his Eighth Amendment claim.

Second, in order to survive summary judgment, Plaintiff must
come forth with sufficient proof that Defendants were
subjectively, deliberately indifferent to the risk of serious
harm to him.   To meet this element, Plaintiff must prove that
Defendants actually knew that a substantial risk of serious harm
existed, and that they "knowingly or recklessly" declined to take
action to prevent that harm. LaMarca, 995 F.2d at 1535.   "[A]n
officials's failure to alleviate a significant risk that he
should have perceived but did not, while no cause for
commendation, cannot under our cases be condemned as the
infliction of punishment." Farmer, 511 U.S. at 838.   "'Whether a
prison official had the requisite knowledge of a substantial risk
is a question of fact subject to demonstration in the usual ways,
including inference from circumstantial evidence.'" Hale, 50 F.3d
at 1583 (quoting Farmer, 511 U.S. at 842).   "Thus, 'a factfinder

13

may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 842).

Plaintiff alleges that, on the morning that he was attacked, Correctional Officer Andrews abandoned his assigned post, thereby exposing Plaintiff "to violent injury at the hands of other inmates." (Doc. 1 at 21).  As discussed above, Plaintiff has failed to present sufficient evidence that the conditions of the prison actually posed "a substantial risk of serious harm" to him.  Moreover, even if Defendant Andrews' absence from his assigned post when the incident occurred posed a substantial risk of serious harm to Plaintiff, that allegation, standing alone, does not indicate that Defendant Andrews was deliberately indifferent to the risk of harm.  Deliberate indifference is not established merely by alleging that a prison guard was not at his post. <u>See</u> <u>Hale</u>, 50 F.3d at 1582 (guard's failure to check "bullpen" for two-and-a-half hours during which time plaintiff was beaten by other inmates did not "support the level of deliberate indifference and causal connection necessary to hold [the jailer] personally responsible.").  While absence from an assigned post might support an inference of negligence, liability cannot be imposed in a § 1983 action for negligent acts. <u>Daniels v. Williams</u>, 474 U.S. 327, 328-31 (1986).  Accordingly, with respect to Defendant Andrews, the Court finds Plaintiff's

14

evidence insufficient to establish the subjective element of
Plaintiff's Eighth Amendment claim.

Plaintiff also alleges that Correctional Officer Supervisors
Williams and Lane violated his Eighth Amendment rights by failing
to properly supervise Andrews.  The law is clear, however, that a
supervisor may not be held liable in a § 1983 action based solely
on the acts of his employee. See Fundiller v. City of Cooper
City, 777 F.2d 1436, 1443 (11th Cir. 1985) (comparing the
position of a supervisor to a municipality which may have
liability imposed through its customs or policies, but not
through employees' actions).  Instead, "supervisory liability
under § 1983 occurs either when the supervisor personally
participates in the alleged unconstitutional conduct or when
there is a causal connection between the actions of a supervising
official and the alleged constitutional deprivation." Cottone v.
Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The necessary
causal connection can be established 'when a history of
widespread abuse puts the responsible supervisor on notice of the
need to correct the alleged deprivation, and he fails to do so.'"
Id. (citations omitted).  "Alternatively, the causal connection
may be established when a supervisor's 'custom or policy . . .
result[s] in deliberate indifference to constitutional rights' or
when facts support 'an inference that the supervisor directed the
subordinates to act unlawfully or knew that the subordinates

would act unlawfully and failed to stop them from doing so.'" <u>Id.</u>
(citations and internal quotation marks omitted).  Where, as
here, a plaintiff's claim rests on a defendant's failure to
supervise his employee, the plaintiff "must present some evidence
that the [defendant] knew of a need to train and/or supervise in
a particular area and the [defendant] made a deliberate choice
not to take any action[,]" that this failure to train and/or
supervise constitutes a custom or policy, and that the failure to
train and/or supervise was the moving force behind the
deprivation of a constitutional right. <u>Gold v. City of Miami</u>, 151
F.3d 1346, 1350 (11th Cir. 1998).  Plaintiff has presented no
such evidence in this case.  Accordingly, with respect to
Defendants Williams and Lane, the Court finds Plaintiff's
evidence insufficient to establish the subjective element of his
Eighth Amendment claim.

   Plaintiff also alleges that the remaining Defendants, Warden
Jerry Ferrell, Assistant Warden Walter Myers, and Correctional
Officer Supervisor Tony Patterson, were deliberately indifferent
to his safety by failing to ensure that security was maintained
at the facility.  As discussed above, a prison official's duty
under the Eighth Amendment is to ensure "reasonable safety."
<u>Farmer</u>, 511 U.S. at 844.  "[A] prison custodian is not the
guarantor of a prisoner's safety." <u>Purcell</u>, 400 F.3d at 1321
(citations omitted).  In this case, it is undisputed that Officer

Andrews was assigned to Plaintiff's dormitory on the morning of the attack. (Doc. 10, Part 3 at 6, Post Listing).  There is no evidence that these, or any of the Defendants, were aware of a specific or general risk of an inmate attack that morning.  There is no evidence that any threats had ever been made by Johnson or Broughton against Plaintiff, and made known to these Defendants, nor is there any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." <u>Farmer</u>, 511 U.S. at 842 (internal quotation marks omitted).  The fact that the facility was experiencing conditions of overcrowding and understaffing at the time of the attack, without more, is insufficient for a jury to reasonably find that these Defendants knew that a substantial risk of serious harm existed, and that they "knowingly or recklessly" declined to take action to prevent that harm. <u>LaMarca</u>, 995 F.2d at 1535.  Accordingly, with respect to Defendants Ferrell, Myers, and Patterson, the Court finds Plaintiff's evidence insufficient to establish the subjective element of his Eighth Amendment claim.

Finally, Plaintiff has failed to show that Defendants' actions, orders, customs, policies, or breaches of statutory duty proximately caused the deprivation of his constitutional rights. The evidence in this case is undisputed that the attack on Plaintiff was prompted by Plaintiff refusing to repay a fellow

17

inmate for certain "store items" which the inmate claimed Plaintiff owed him. (Doc. 1 at 12; Doc. 10, Part 2 at 2; Doc. 10, Part 3 at 7).  The evidence indicates that the attack was isolated and premeditated, occurring suddenly in the early morning hours when Plaintiff was asleep. (Doc. 1 at 12).  By all accounts, it was unanticipated by Plaintiff, as well as Defendants.  Plaintiff has presented no evidence that the attack was the proximate result of Defendant Andrews leaving his post, nor has he presented evidence that he was being confined in a prison "where violence and terror reign[ed]" and where inmate-on-inmate violence abounded. Purcell, 400 F.3d at 1320.  Accordingly, the Court finds Plaintiff's evidence insufficient to satisfy the causation element of his Eighth Amendment claim.

Accordingly, having found Plaintiff's evidence insufficient for a jury to reasonably find that Defendants knew of a substantial risk of harm to Plaintiff, that Defendants were deliberately indifferent to that risk, and that Defendants' conduct caused the deprivation of Plaintiff's constitutional rights, summary judgment is due to be granted to Defendants on Plaintiff's Eighth Amendment claim.[3]

---

[3] Plaintiff also charges that Defendants conspired to refuse to protect" him by not taking the proper action to ensure his safety.  In order to prove a § 1983 conspiracy, Plaintiff "must show that the parties 'reached an understanding' to deny [him] his... rights [and] prove an actionable wrong to support the conspiracy." Bailey v. Board of County Comm'rs of Alachua

IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Warden Jerry Ferrell, Assistant Warden Walter Myers, Correctional Officer Supervisor Tony Patterson, Correctional Officer Supervisor Albert Williams, Correctional Officer Supervisor Steven Lane, and Correctional Officer Charles Andrews are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' motion for summary judgment be **GRANTED**, that this action be **DISMISSED** with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff Stan Moore on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **1st** day of **August 2006**.


                    **/s/ SONJA F. BIVINS**
                **UNITED STATES MAGISTRATE JUDGE**

---

County, 956 F. 2d 1112, 1122 (llth Cir.), cert. denied, 506 U.S. 832, 113 S.ct. 98, 121 L.Ed. 2d 58 (1992).  Plaintiff has not shown that Defendants reached an "understanding" to refrain from taking action to ensure his safety,  nor has Plaintiff established an actionable wrong - "deliberate indifference to his safety",  to support his claim of a conspiracy. Id. at 1122. Accordingly, Plaintiff cannot establish that there is a genuine issue for trial with regard to his alleged conspiracy claim.

19

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
## AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.


2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.